# NO. 24-4598

In The

# United States Court Of Appeals
## For The Fourth Circuit

## UNITED STATES OF AMERICA,

*Plaintiff – Appellee,*

**v.**

## MAHMOUD MAZEN ABU-DAMES,

*Defendant – Appellant.*

**ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA
AT GREENSBORO**

———————————

## BRIEF OF APPELLANT

———————————

**John D. Bryson**
**WYATT, EARLY,**
  **HARRIS & WHEELER, LLP**
**1912 Eastchester Drive**
**Suite 400**
**High Point, NC  27265**
**(336) 819-6016**
**jbryson@wehwlaw.com**

*Counsel for Appellant*

*Gibson*Moore Appellate Services, LLC
206 East Cary Street  ♦  P.O. Box 1460 (23218)  ♦  Richmond, VA  23219
804-249-7770  ♦  www.gibsonmoore.net

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ........................................................................ i

STATEMENT OF JURISDICTION .......................................................... 1

STATEMENT OF THE ISSUES ................................................................ 2

STATEMENT OF THE CASE .................................................................. 2

Statement of Facts ................................................................................... 4

SUMMARY OF ARGUMENT ................................................................. 6

ARGUMENT ........................................................................................... 7

I.    THE    DISTRICT    COURT    MISCALCULATED
      APPELLANT'S GUIDELINE RANGE BY INCLUDING 30
      3D PRINTED FRAMES AND RECEIVERS IN VARIOUS
      STAGES OF COMPLETION IN DEFENDANT'S FIREARM
      COUNT AS THESE ITEMS DID NOT QUALIFY AS A
      FIREARM UNDER U.S.S.G. § 2K2.1(b)(1) ................................... 7

      A.    STANDARD OF REVIEW .................................................... 7

      B.    ARGUMENT ......................................................................... 7

      C.    ANALYSIS ............................................................................ 9

CONCLUSION ...................................................................................... 14

CERTIFICATE OF COMPLIANCE ....................................................... 15

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Bouchikhi v. Holder*,
  676 F.3d 173 (5th Cir. 2012) .......................................................... 10

*Crandon v. United States*,
  494 U.S. 152, 110 S. Ct. 997, 108 L. Ed. 2d 132 (1990)................. 13

*United States v. Breast*,
  8 Fed 4th 808, 820 (8th Cir. 2021).................................................. 14

*United States v. Rowold*,
  429 F.Supp.3d 469 (December 18, 2019, N.D. OH) ....................... 11

*United States v. Velasquez-Canales*,
  987 F.3d. 367 (4th Cir. 2021)............................................................ 7

*Vanderstok v. Garland*,
  86 F.4th 179 (5th Cir. 2023) (U.S. Supreme Court
  certiorari granted by *Garland v. Vanderstok*, 2024 U.S.
  LEXIS 1817, U.S., Apr. 22, 2024) ............................ 6, 10, 11, 12, 13

*Whitman v. United States*,
  574 U.S. 1003, 135 S. Ct. 352, 190 L. Ed. 2d 381 (2014)............... 13

**Statutes**

18 U.S.C. § 921 ....................................................................................... 14

18 U.S.C. § 921(a)(3)............................................................................... 6, 9

18 U.S.C. § 922(a)(1)(A)............................................................................ 1, 2

18 U.S.C. § 922(o) .................................................................................... 1, 2

18 U.S.C. § 933(a)(1)................................................................................ 1, 2

18 U.S.C. § 3231 ......................................................................................... 1

28 U.S.C. § 1291 ............................................................... 1

Gun Control Act ............................................................. 13

**United States Sentencing Guidelines**

U.S.S.G. § 2K2.1 ......................................................... 9, 14

U.S.S.G. § 2K2.1(b)(1) ......................................... 2, 3, 4, 7, 9

U.S.S.G. § 2K2.1(b)(1)(d) ................................................. 2

**Other Authorities**

27 C.F.R. § 478.12(a)(1) ........................................... 6, 8, 10

27 C.F.R. § 478.12(a)(2) .............................................. 6, 8

*Webster's Third International Dictionary* 902, 1894 (1971) .................. 10

## STATEMENT OF JURISDICTION

This is a direct appeal by Appellant, Mahmoud Mazen Abu-Dames of his sentence in a federal criminal case from the Middle District of North Carolina. Jurisdiction was conferred on the United States District Court by 18 U.S.C. § 3231. Appellate jurisdiction is conferred on this Court by 28 U.S.C. § 1291. Appellant pled guilty to one count of unlawful dealing in firearms in violation of 18 U.S.C. § 922(a)(1)(A), one count of possession of a machine gun in violation of 18 U.S.C. § 922(o) and one count of firearms trafficking in violation of 18 U.S.C. § 933(a)(1) on February 6, 2024, pursuant to a plea agreement (JA 4-5, JA 12-20). Sentence was imposed by the District Court on October 22, 2024. (JA 94-100) The Court's written judgment issued on November 1, 2024. (JA 102-108) Appellant filed a timely Notice of Appeal on November 6, 2024. (JA 108-110).

## STATEMENT OF THE ISSUES

**I.    DID THE DISTRICT COURT MISCALCULATE APPELLANT'S GUIDELINE RANGE WHEN IT COUNTED 30 3D PRINTED FRAMES AND RECEIVERS IN VARIOUS STAGES OF COMPLETION IN DEFENDANT'S FIREARM COUNT UNDER U.S.S.G. § 2K2.1(b)(1)?**

## STATEMENT OF THE CASE

On October 30, 2023, a Federal Grand Jury for the Middle District of North Carolina returned a six-count indictment against Appellant. (JA 8-11) Appellant was charged with one count of unlawful dealing in firearms in violation of 18 U.S.C. § 922(a)(1)(A), three counts of possession of a machine gun in violation of 18 U.S.C. § 922(o) and two counts of firearms trafficking in violation of 18 U.S.C. § 933(a)(1). (JA 8-11) Appellant pled guilty to one count of unlawful dealing in firearms, one count of possession of a machine gun and one count of firearms trafficking on February 6, 2024, pursuant to a plea agreement (JA 4-5, JA 12-20).

Appellant's draft presentence investigation report was filed on May 7, 2024. (JA 5) The presentence report determined that defendant was responsible for between 100 and 199 firearms under U.S.S.G. § 2K2.1(b)(1)(d), thus enhancing defendant's guideline range by eight

2

points. (JA 123) Defendant objected to the firearm count made in the draft presentence report. (JA 5) The parties then filed multiple pleadings regarding the appropriate calculation for the firearm count. (JA 5-6) Defendant took the position that 96 of the 118 firearms counted in his firearm count in the presentence report did not qualify as a firearm under U.S.S.G. § 2K2.1(b)(1) and that defendant should be held accountable for 22 firearms. This would give him a four-level specific offense characteristic enhancement rather than the eight levels assessed in the presentence report. The government ultimately conceded to some of defendant's objections to the firearm count but argued that defendant's total firearm count was between 25 and 99 and thus he should receive a six-level specific offense characteristic enhancement under U.S.S.G. § 2K2.1(b)(1).

At defendant's sentencing hearing, the parties disagreed about the inclusion of 30 3D printed frames and receivers in various stages of completion identified on page 12 of the presentence report (JA 122) The court conducted an evidentiary hearing during Appellant's sentencing hearing in which the government presented the testimony of Jason Armstrong of the Bureau of Alcohol, Tobacco, Firearms and Explosives,

who testified as an expert in the field of identification, operation and design of firearms. (JA 48-51) The Court overruled defendant's objection as it related to the 30 3D printed frames and receivers, including those firearms in defendant's guideline calculation firearm count under U.S.S.G. § 2K2.1(b)(1). (JA 79-81). The Court then imposed a sentence of 90 months to be followed by three years of supervised release. (JA 103-104)

### Statement of Facts

In August of 2022, ATF Greensboro Field Officers were contacted by an undercover ATF agent working in Phoenix and provided with information regarding a suspected firearms trafficker located in Greensboro, North Carolina. The suspect would ultimately be identified as Appellant. (JA 21) The Arizona agent advised that while conducting undercover activities on telegram, he made contact with Appellant and determined that he lived at a specific address in Greensboro, North Carolina. He ultimately had communications with Appellant in which he discussed purchasing drop-in auto sears from him. Appellant sent him photographs and videos of items that he had for sale. (JA 22-25)

In August 2023, Greensboro ATF agents, acting in an undercover capacity, began communicating with Appellant on telegram. They ultimately arranged for a transaction in which Appellant agreed to sell four to five drop-in auto sears and one Glock conversion device for $400.00. As part of the transaction, Appellant also included four dosage units of Xanax in the package that he left for the undercover officer as part of the sale. (JA 27-29)

ATF agents then arranged a second transaction to take place on September 11, 2023. On this occasion, the undercover agent met personally with Appellant in a Harris Teeter parking lot in Greensboro, North Carolina. During this exchange, Appellant sold two AR-15 pistol variants along with two 3D printed drop-in auto sears and a Glock conversion device. Appellant again provided additional dosage units of suspected Xanax. The agents and Appellant discussed future transactions. (JA 31-33)

ATF agents conducted yet another purchase from Appellant on September 20, 2023. On this occasion, Appellant sold two privately made pistols and two Glock conversion devices. Once again, Appellant provided Xanax as part of the transaction. (JA 35)

On October 2, 2023, ATF agents conducted a search pursuant to a search warrant at the appellant's residence in Greensboro, North Carolina during which the agents recovered three 3D printers and numerous firearms. (JA 37-39)

## SUMMARY OF ARGUMENT

The District Court counted approximately 30 3D printed pistol frames and receivers in the defendant's firearm count enhancing his guideline calculation by an additional two levels. The definition of a frame and receiver as set out in 18 U.S.C. § 921(a)(3) was purportedly modified by ATF through a change in regulations, 27 C.F.R. § 478.12(a)(1) and (2). Prior to the change in regulation, the approximately 30 items would not have met the definition of either a frame or receiver and therefore would not have counted as a firearm in defendant's guideline calculation. The Court counted these items as firearms, ultimately adopting the definition of frame and receiver in the new regulation promulgated by ATF which took effect on August 22, 2022. The Fifth Circuit Court of Appeals struck down that regulation in *Vanderstok v. Garland, infra.* The Fifth Circuit's ruling in that case is currently before the United States Supreme Court. Even if the

6

Supreme Court upholds the change in regulation, there has been no change in either the statute or the guideline which would permit the District Court to count items as firearms.

### ARGUMENT

I.  **THE DISTRICT COURT MISCALCULATED APPELLANT'S GUIDELINE RANGE BY INCLUDING 30 3D PRINTED FRAMES AND RECEIVERS IN VARIOUS STAGES OF COMPLETION IN DEFENDANT'S FIREARM COUNT AS THESE ITEMS DID NOT QUALIFY AS A FIREARM UNDER U.S.S.G. § 2K2.1(b)(1).**

### A.  STANDARD OF REVIEW

In deciding a challenge to the District Court's sentencing guidelines calculation, factual findings are reviewed for clear error and legal conclusions *de novo*. *U.S. v. Velasquez-Canales,* 987 F.3d. 367 (4th Cir. 2021).

### B.  ARGUMENT

**Facts**

On October 20, 2023, members of the Alcohol, Tobacco and Firearms Greensboro Field Office, the FBI and the Greensboro Police Department executed a search warrant at the appellant's residence in Greensboro, North Carolina.  While numerous items were recovered, the items at issue in the instant appeal are listed as "30 3D printed

frames and receivers in various stages of completion (located in a cardboard box under the bed in Mahmoud Abu-Dames's room.)" (JA 122)

At Appellant's sentencing hearing, the government called Jason Armstrong, an employee of the Bureau of Alcohol, Tobacco, Firearms and Explosives, who was qualified as an expert in the field of identification, operation and design of firearms. Armstrong testified that he had examined the box of items that was identified as 30 3D printed items in the presentence report. (JA54-55) Armstong stated he found 31 items that he identified as firearms. He stated there were 20 pistol frames and 11 receivers. (JA 56)

On cross examination, Agent Armstong acknowledged that when he was determining what constituted a frame or receiver and therefore a firearm, he was using the newer definition of frame and receiver under 27 C.F.R. § 478.12(a)(1) and (2). Agent Armstrong acknowledged that this new regulation came into effect in August 2022. Armstong conceded that 19 of the frames he was describing as firearms for defendant's guideline calculation would not have counted as frames before the change in the definition of a "frame" in the new ATF

regulation. Armstong further acknowledged that another 10 items that he was counting as firearms were what were known as lower receivers, which would not contain all three parts, that being the bolt or breach block and the hammer and firing mechanism, of a firearm without an additional upper receiver or assembly. (JA 65-67).

## C.   ANALYSIS

U.S.S.G. § 2K2.1 states that the term "firearm" has the same meaning the term is given in 18 U.S.C. § 921(a)(3).  U.S.S.G. § 2K2.1 Application Note 1. 18 U.S.C. § 921(a)(3) contains the following definition of firearm:

> The term "firearm" means (A) any weapon (including a starter gun) which will or is designed to or may readily be converted to expel a projective by the action of an explosive; (B) the frame or receiver of any such weapon; (C) a firearm muffler or firearm silencer; or (D) any destructive device. Such term does not include an antique firearm.

*Id.* Defendant concedes that frames and receivers ordinarily qualify under the definition of firearm for purposes of U.S.S.G. § 2K2.1(b)(1). However, the instant case involves items that do not meet the definition of a frame or receiver.  These items do not qualify as firearms under U.S.S.G. § 2K2.1(b)(1).

9

> Because Congress did not define "frame or receiver" in the
> GCA, the ordinary meaning of the words control. *See
> Bouchikhi v. Holder, 676 F.3d 173, 177 (5th Cir. 2012)*. Both
> a "frame" and a "receiver" had set, well-known definitions at
> the time of the enactment of the GCA in 1968. In 1971,
> Webster's Dictionary defined a "frame" as "the basic unit of a
> handgun which serves as a mounting for the barrel and
> operating parts of the arm" and a "receiver" as "the metal
> frame in which the action of a firearm is fitted and which the
> breech end of the barrel is attached." *Webster's Third
> International Dictionary* 902, 1894 (1971). Similarly, ATF's
> 1978 definition of frame and receiver--the most recent
> iteration of the definition before the Final Rule's proposed
> change--defined "frame or receiver" as "[t]hat part of a
> firearm which provides housing for the hammer, bolt or
> breechblock, and firing mechanism, and which is usually
> threaded at its forward position to receive the barrel."

*Vanderstok v. Garland*, 86 F.4th 179, 188 (5th Cir. 2023) (footnote

omitted) (U.S. Supreme Court certiorari granted by *Garland v.

Vanderstok*, 2024 U.S. LEXIS 1817, U.S., Apr. 22, 2024).

As Agent Armstrong acknowledged in his testimony, his

determination that the 19 Glock – type pistol frames were frames and

therefore firearms, was based on the new definition of a frame under 27

C.F.R. § 478.12(a)(1).  Armstrong conceded that these 19 items would

not have been considered a frame and therefore a firearm previously

because a frame had to accept three components, a hammer, a bolt or a

breach block, and a firing mechanism. (JA 64) Glock type firearms do not use a hammer. (JA 64) Accordingly, they would not have met the definition of a frame for a firearm prior to the new ATF regulation of August 2022. (JA 64). Additionally, ten other items that Armstrong identified as receivers and therefore firearms would not have been considered receivers and therefore firearms prior to the new regulation. These ten items, described as "lower receivers" would not have been able to accept a bolt, which is required under the original definition of receiver. The ten items described as lower receivers would require an additional part known as the upper receiver or upper assembly in order to receive the bolt. (JA 66-67) (See further, *United States v. Rowold*, 429 F.Supp.3d 469 (December 18, 2019, N.D. OH) (concluding the lower receiver of an AM-15 does not fit the definition of "frame or receiver.") Accordingly, these additional ten items would not have met the definition of receiver and therefore a firearm prior to the ATF's regulation of August 2022 which changed the definition of frame and receiver.

Appellant has cited *Vanderstok v. Garland* and acknowledges that this case is currently on review before the United States Supreme

Court. In *Vanderstok*, the Fifth Circuit Court of Appeals invalidated the ATF's new definition of frame and receiver in the modified regulation of August of 2022. The *Vanderstok* court specifically held that ATF had exceeded its authority in issuing the new regulation.

> It has long been said-correctly-that the law is the expression of *legislative* will. As such, the best evidence of the legislature's intent is the carefully chosen words placed purposefully into the text of a statute by our duly-elected representatives. Critically, then, law-making power - the ability to transform policy into real-world obligations--lies solely with the legislative branch. Where an executive agency engages in what is, for all intents and purposes, "law-making," the legislature is deprived of its primary function under our Constitution, and our citizens are robbed of their right to fair representation in government. This is especially true when the executive rule-turned-law criminalizes conduct without the say of the people who are subject to its penalties.

*Vanderstok* at 182 (footnotes omitted).

The Fifth Circuit concluded that an executive agency could not write laws for our nation.

> ATF, in promulgating its Final Rule, attempted to take on the mantle of Congress to "do somethings" with respect to gun control. But it is not the province of an executive agency to write laws for our nation. That vital duty, for better or for worse, lies solely with the legislature. Only Congress may make the deliberate and reasoned decision to enact new or modified legislation regarding firearms based on the important policy concerns put forth by ATF and the various *amici* here. But unless and until Congress so acts to expand

or alter the language of the Gun Control Act, ATF must operate within the statutory text's existing limits. The Final Rule impermissibly exceeds those limits, such that ATF has essentially rewritten the law. This it cannot do, especially where criminal liability can-and, according to the Government's own assertions, *will-be* broadly imposed without any Congressional input whatsoever. An agency cannot label conduct lawful one day and felonious the next-yet that is exactly what ATF accomplishes through its Final Rule.

*Id.* at 197.

Even if the Supreme Court reverses the Fifth Circuit in *Vanderstok* and upholds the ATF's new regulations as it relates to firearms and receivers, Appellant should still succeed in the instant case. A change in an agency regulation does not affect the underlying statute nor the guideline.

As Justice Scalia reminded us, "legislatures, not executive officers, define crimes" and "[c]riminal statutes are for the courts, not the Government, to construe." *Whitman v. United States, 574 U.S. 1003, 135 S. Ct. 352, 352-53, 190 L. Ed. 2d 381 (2014)* Scalia, J., dissenting from denial of certiorari) (cleaned up) (citation omitted). Deferring to the prosecuting branch's interpretations of criminal statutes "replac[es] the doctrine of lenity with a doctrine of severity." *Crandon v. United States, 494 U.S. 152, 178, 110 S. Ct. 997, 108 L. Ed. 2d 132 (1990)* (Scalia, J. concurring in the judgment). And that is particularly salient in areas of criminal law where it "seems agencies change their statutory interpretations almost as often as elections change administrations."

*Guedes, 140 S. Ct. at 790 (Gorsuch, J., statement regarding denial of certiorari).*

*United States v. Breast,* 8 Fed 4th 808, 820 (8th Cir. 2021) (footnote omitted)

Since the rule change, there has been no corresponding modification to 18 U.S.C. § 921 nor any related change to U.S.S.G. § 2K2.1 that would alter the definition of a firearm under either the statute or the guideline. Therefore, the 30 incomplete frames and receivers do not qualify as firearms and should not be added to the Defendant's firearm count.

## CONCLUSION

Based on the foregoing, Defendant prays this Court to reverse the District Court's ruling regarding Defendant's guideline calculation and remand the matter for resentencing.

Respectfully submitted,

/s/John D. Bryson
John D. Bryson (N.C.S.B. No. 12883)
Attorney for Defendant
1912 Eastchester Dr
Suite 400
High Point, North Carolina 27265
Telephone: (336) 819-6016
Facsimile: (336) 819-6076
E-mail: jbryson@wehwlaw.com

## <u>CERTIFICATE OF COMPLIANCE</u>

1.    This document complies with type-volume limits because excluding the parts of the document exempted by Fed. R. App. P. 32(f): (cover page, disclosure statement, table of contents, table of citations, signature block, certificates of counsel, appendix, attachments):

This document contains <u>2,729 words</u>.

2.    This document complies with the typeface requirements because:

It has been prepared in a proportional spaced typeface using <u>Microsoft Word</u> in <u>14-point Times New Roman</u>.

Respectfully submitted this January 30 2025.

<u>/s/John D. Bryson</u>
Counsel for Defendant